IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREN A. SALLIVANTI,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY,
OF AMERICA,

    Defendant.

3:11-CV-02263

(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court are cross-motions for summary judgment filed by Plaintiff Karen Sallivanti (Doc. 42) and by Defendant Unum Life Insurance Company (Doc. 33). Plaintiff filed this action under Section 1132(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, to recover benefits that she alleges that Unum Life Insurance owes her following a car accident that allegedly prevented her from performing the material duties of her occupation. (Pl.'s Compl., Doc. 1, at ¶¶ 1, 98-100.) For the reasons set forth below, the Court will deny the cross-motions, because there are many genuine issues of material fact which must be resolved at trial.

## II. Scope and Standard of Review

The parties have stipulated that the proper standard of review of Unum's decision to deny Sallivanti benefits is *de novo*. (*See* Doc. 18.) In an Order dated July 25, 2012, the Court approved that stipulation. (*See* Doc. 19 at 7.)

At the outset, there are two issues raised in the parties' motions that the Court must address. First, the Defendant argues that, when a court rules on a summary judgment motion based on an administrative record under *de novo* review, the court is not required to view the evidence in the light most favorable to the non-moving party, but rather must make its own independent resolution of material facts. (*See* Brief in Supp. of Def.'s Mot. for Summ. J., Doc. 35, at 13.) Defendant's support for this claim comes from a footnote in a recent case from the Eastern District of Pennsylvania. *See White v. Prudential Ins. Co.*, 908 F. Supp. 2d 618, 625 n.9 (E.D. Pa. 2012) (citing *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)). However, while the *White* court does indeed support the Defendant's statement, the Third Circuit case that *White* itself cited for the same proposition states exactly the opposite. In relevant part, the Third Circuit stated that when ruling on a summary judgment motion based on an administrative record, "[w]e must also view the evidence in the light most favorable to Macfarlan (the nonmovant) and draw all reasonable inferences in his favor." *MacFarlan*, 675 F.3d at 271. This Court is aware of no case law supporting the proposition that a

district court may make its own resolutions of factual disputes at the summary judgment stage when conducting *de novo* review of an administrative record, and so Defendant's position appears meritless.

Equally meritless is the Defendant's second claim that the "Court is generally limited to the ERISA administrative record on *de novo* review if the record is sufficiently developed." (*See* Brief in Supp. of Def.'s Mot. for Summ. J. at 14.) Once again, the cases cited do not substantiate this proposition. The seminal Third Circuit case on review of ERISA claims states in unequivocal terms:

> We hold that a district court exercising *de novo* review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's Administrator. Accordingly, the district court did not err by considering documents not before the Fund's Administrator.

*Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1184-85 (3d Cir. 1991). It adds,

> If the record on review is sufficiently developed, the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision, making its own independent benefit determination. *See McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 431 (6th Cir.1989) (where the record was insufficiently developed for review of a fact based benefit denial, the court remanded for the district court to "supplement the record" and then make a *de novo* benefit determination).

*Id.* at 1184. As the quoted text makes clear, such limitations are purely discretionary. Nowhere does the court in *Luby* say that a district court must, or even should, limit its review to what is contained in a fully developed record.

Neither side has presented any case law supporting the proposition that the Court should treat a challenge to, or defense of, an ERISA denial of benefits based on an administrative review any differently at the summary judgment stage than it would any other cause of action. Accordingly, the traditional summary judgment standards apply.

Those standards are well-known. Through summary adjudication the Court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

In this case, the parties have filed cross-motions for summary judgment. (Docs. 33; 42). According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008). When reviewing each cross-motion, the court is still bound to view the evidence in the light most favorable to the nonmovant. FED.R.CIV.P. 56; *United States v. Hall*, 730 F. Supp. 646, 648 (M.D. Pa. 1980).

### III. Statement of Undisputed Facts

Karen Sallavanti suffered a rear-end collision while stopped at a traffic light on October 6, 2009. (*See* Pl.'s Statement of Facts in Supp. of Mot. for Summ. J., Doc. 42-1, at ¶ 18.) She was driving an Acura RDX—which is Acura's smallest SUV—and was rear-ended by a Volvo sedan. (*See id.* at ¶¶ 18, 21-22.) According to the police report written at the scene, an eye-witness claims that the striking vehicle "did not appear [to be] exceeding the 45 mph speed limit at the time of the accident." (App. to Def.'s Mot. for Summ. J., Doc. 36, at 147.) Neither of the two drivers was transported by EMS from the scene. (*Id.* at 145.) Sallavanti admits to driving her car "the short distance home"

5

following the accident, but while doing so, her husband allegedly noticed that the exhaust system was "bottoming out," so that the car had to be towed from the Sallavantis' home. (Pl.'s Statement of Facts at ¶¶ 24-25.)

Apparently the same day, Sallavanti sought medical attention. (*Id.* at ¶ 26.) Thereafter, she began an extended series of medical examinations, primarily for pain in the area of her cervical and lumbar spine which caused what her doctor described as "acute spasms." (*See id.* at ¶ 27; Pl.'s Compl., at ¶ 36.) On October 9, her doctor concluded that, "it is my opinion with a reasonable degree of medical certainty that as a direct result of the injuries sustained at the time of the 10/06/09 accident . . . she has severe neck pain, shoulder girdle pain, and lumbar pain." (Pl.'s Statement of Facts at ¶ 27.) As a result, she was unable to remain in the same position—standing, sitting, or walking—for more than 30 minutes at a time. (*See id.* at ¶ 32, p. 12.) However, her diagnoses were primarily based on her own subjective reports of the pain she experienced; with the exception of what is variously called a "shallow disc bulge" and a "disc protusion at her L4-5 vertebra," (*Id.* at ¶¶ 40, 42), there were no physical abnormalities to explain Sallavanti's pain. (*See also* Def.'s Response in Opp'n to Pl.'s Statement of Facts, Doc. 47-1, at 40-42 (disputing the significance of the "disc protusion"); Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J., Doc. 34, at ¶ 34, p. 19 (calling the "disc bulge" "minimal" and not indicative of more serious

problems); *id.* at ¶ 34, pp. 15-17 (arguing that Sallavanti's diagnoses were based on subjective pain complaints and that her doctor did not conduct adequate tests to verify her complaints)).

At the time of the accident, Sallavanti was employed as a paralegal at the law firm Lenahan & Dempsey in Scranton, where she received long-term disability coverage through Unum Life Insurance. (*See* Pl.'s Statement of Facts at ¶¶ 1-2.) She filed a disability claim with Unum, claiming that she could no longer perform her job duties as a paralegal, which required her to sit in the same posture for long periods of time; to walk around the office despite her difficulties maintaining her balance; to drive to and from her workplace; to lift heavy boxes of documents, which could be up to twenty pounds; and to attain a level of mental focus and concentration that had not been possible since her accident. (*See* App. to Def.'s Mot. for Summ. J., Doc. 36-1, at 171.)

Unum, however, disagreed with this assessment and found that she could perform the "material and substantial duties" of her job, even if she might need accommodations for certain secondary aspects of it. (*See id.*, Doc. 36-4, at 167.) It later upheld the decision to deny benefits through its internal appellate review process. (*Id.* at 165.) The primary justifications that it cited for denying the claim were (1) the limited testing and findings from Sallavanti's personal physician, (2) the lack of physical abnormalities on the imaging studies on file, (3) the "medically inconsistent" fact that

7

Sallavanti's symptoms only worsened despite "aggressive treatment" (and despite the fact that her symptoms strangely worsened after a few months of improving, (see id., Doc. 36-4, at 166)), and (4) the lack of serious damage to her car. (See id., Doc. 36-1, at 151.) Unum did not send a physician to meet with Sallavanti in person, but rather had several staff physicians conduct an entirely paper review of her medical files. (See Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J., Doc. 34, at ¶ 2.)

### IV. Statement of Disputed Facts

In accordance with the summary judgment standards explained in section II, *supra*, it is clear that many genuine disputes of material fact exist in this case that cannot be resolved on summary judgment. In fact, even if the Court were to limit itself to the administrative record, it could not resolve these disputes on summary judgment, because many of them are disputes regarding facts contained in the record itself. Many of them are also disputes as to the credibility of medical opinions contained in the record, which the Court is even less capable of resolving without the opportunity to hear the medical experts' testimony in open court, on both direct and cross examination; to ask questions of the medical experts, if necessary; and to observe their demeanor while testifying.

In summary, the material facts that remain in dispute are as follows:

1. *The seriousness of the accident.* Among the reasons listed for Unum's denial of Sallivanti's claim is that the traffic accident "would not be expected to lead to significant physical injury leading to extended work restrictions." (App. to Def.'s Mot. for Summ. J., Doc. 36-1, at 152.) Unum argues that the police officer at the scene of the accident marked Sallivanti's injuries and the damage to her car as "minor," and that the force of the collision was not enough to force Sallivanti's car into the car ahead of her. (Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. at ¶ 32; *see also* App. to Def.'s Mot. for Summ. J., Doc. 36, at 144-45 (police report noting personal injuries and vehicular damage as minor).) Sallivanti denies that any such inferences are contained in the police report, (Pl.'s Responses to Def.'s Fact Statement, Doc. 42-2, at ¶ 32), and asserts that "[b]oth vehicles are severely damaged," (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., Doc. 41, at 1.) But this is not an issue that the Court can decide solely on the strength of the written police report, especially because the officer describing Sallivanti's injuries was likely not a medical professional qualified to accurately judge her physical condition, and so the admissibility of his opinion as to her injuries and the weight, if any, to be given that opinion, if admitted, must await trial. Moreover, even if the Court were to accept the officer's opinion that the damage to the car was "minor," there is still a disputed

issue of fact as to whether the damage that did in fact exist was sufficient to cause the injuries that Sallivanti alleges.

2. *The speed of the car that struck Sallivanti.* According to the police report, one witness stated that "it did not appear that [the car that struck Sallivanti] was exceeding the 45 mph speed limit at the time of the accident." (App. to Def.'s Mot. for Summ. J., Doc. 36, at 147.) The Plaintiff argues that "the logical corollary" of this statement, combined with the striking driver's statement that she was trying to slow down when she struck Sallivanti, is that the striking driver was travelling at 45 mph. (Pl.'s Responses to Def.'s Fact Statement, Doc. 42-2, at ¶ 32.) Plainly, this is an unjustified interpretation of the two statements; a driver moving at 30 mph would normally slow down when approaching stopped traffic, just as one moving at 45 mph would. But even if we accept the witness's recorded statement—as the parties appear to do—how close the striking driver exactly was to the 45 mph speed limit could have serious implications for the likely extent of Sallivanti's injuries. This is not an insignificant issue: whether the car was travelling at 45, 30, or 20 mph at the time of impact could significantly affect the extent and severity of Sallivanti's injuries. However, the Court has no way of knowing the car's real speed at this stage in the proceedings, which presents another issue for trial as part of the determination of the nature and severity of Sallivanti's injuries and any resulting disability.

3. *The probative value of Sallivanti's doctors' reports.* Perhaps the most important question in this case is whether Sallivanti's doctors' findings and conclusions should be accepted over those of Unum's doctors. Sallivanti's personal physiatrist, Dr. Kenneth Gentilezza, opines at length that Sallivanti is experiencing severe pain and cannot return to work. (*See* App. to Def.'s Mot. for Summ. J., Doc. 36-2, at 48-66.) Conversely, Unum reports in its denial of Sallivanti's appeal that its own medical consultant "commented that Ms. Sallivanti's symptoms appear to be in excess of her examination and diagnostic findings." (*Id.*, Doc. 36-4, at 165.) This belief appears to be an integral part of Unum's denial decision, much of which focuses on the lack of physical evidence, beyond Sallivanti's subjective descriptions of pain, to corroborate Dr. Gentilezza's diagnoses. (*See id.* at 165-67.) Of course, the question of which doctor to believe is clearly a factual issue for trial, not for summary judgment.

4. *The validity of Sallivanti's subjective pain reports.* As noted above, nearly all of Dr. Gentilezza's diagnoses are based on Sallivanti's subjective descriptions of her own pain. Unum claims that these are in excess of medical findings, (Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. at ¶ 36), though Sallivanti denies this, (Pl.'s Responses to Def.'s Fact Statement, Doc. 41-2, at ¶ 36). Sallivanti also asserts that radiological reports reveal injury to her spine that corroborates her pain reports. (*Id.* at ¶ 34, p. 12; *see also* Pl.'s Statement of Facts at ¶¶ 40, 42.) Unum

denies that the radiological findings establish this. (Def.'s Response in Opp'n to Pl.'s Statement of Facts at ¶ 42.) Neither side disputes, however, that a significant portion of Sallivanti's diagnoses was based on her subjective pain reports. Whether such reports can lead to medically valid diagnoses and whether they are enough in this particular case to obligate Unum to pay long-term disability benefits are disputed issues of fact best reserved for trial where Sallivanti and all relevant doctors' credibility can be determined based on their qualifications, testimony, and demeanor.

5. *Whether Sallivanti's improvement really declined in the winter of 2010.* On January 7, 2010, Dr. Gentilezza reported that Sallivanti "declined in her improvement." (App. to Def.'s Mot. for Summ. J., Doc. 36-1, at 3.) Dr. Gentilezza reports that he "perhaps overzealously" increased Sallivanti's massage therapy and acupuncture treatments "to two times a week instead of continuing with the once a week or once every other week treatment," but that "it seems this was too much for her, as she has actually gotten worse instead of better since her last visit, with an escalation of her pain to a 7-8/10, a subjective report of worsening." (*Id.*) Unum calls this "odd" and notes that Sallivanti's "increased symptoms" were "without increased pathology." (Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. at ¶ 34, p. 18.) Again, Sallivanti denies any characterization of Gentilezza's comments not printed in the document. (Pl.'s Responses to Def.'s Fact Statement, Doc. 41-2, at ¶ 34, p. 12.) Nevertheless,

12

whether such a decline in improvement—which manifested itself in the middle of aggressive treatment—is really an abnormality that reasonably casts doubt on Sallivanti's claim is a disputed issue of fact that must be resolved at trial, not on summary judgment.

6. *Whether Sallivanti can perform the material duties of her occupation.* Unum's disability benefits plan requires "proof that an insured is disabled" as a condition precedent to benefit payments. (Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. at ¶ 18; Pl.'s Statement of Facts at ¶ 7.) It defines "disabled" to mean "that because of injury or sickness the insured cannot perform each of the material duties of his regular occupation." (Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. at ¶ 17; Pl.'s Statement of Facts at ¶ 6). Even if the Court were to find that Sallivanti is in fact as seriously injured as she claims, there would still be a dispute of fact as to whether her injuries prevent her from performing the material duties of her occupation—which are distinct from mere "requirements" of the job that do not go to its material essence. However, Sallivanti even denies that Unum has the right to characterize her "regular occupation" under the terms of the contract at all. She claims instead that Unum must only look to the job as it is actually practiced at her place of business. (Pl.'s Responses to Def.'s Fact Statement, Doc. 41-2, at ¶ 37). As such, there does not appear to be consensus as to what in fact a paralegal,

let alone a paralegal at Lenahan & Dempsey, actually does—although, later, Sallivanti indicates possible acceptance of Unum's job description. (*See* Pl.'s Statement of Facts at ¶ 37.) But even this acceptance—assuming that it actually exists—does not really resolve the factual dispute, because it leaves unresolved the question of which job functions are "material" and which are only specific, nonmaterial requirements. For instance, Unum maintained in its appeal decision that lifting heavy boxes of files is not a "material" aspect of a paralegal's job, (App. to Def.'s Mot. for Summ. J., Doc 36-4, at 167), though Sallivanti's previous attorney, her husband Anthony, indicated in correspondence with Unum that it is, (*see id.*, Doc. 36-1, at 171). Moreover, even if the parties were to agree that everything they have discussed so far is a material duty of a paralegal, it is still unclear whether Sallivanti "cannot perform" these duties. For instance, Unum claims that even if Sallivanti cannot hold the same physical position for long, she would have opportunities to shift positions at her desk and to stop work and stretch for a few minutes at a time, which would allow her to maintain the material duties of a paralegal at minimal discomfort. (*Id.*, Doc. 36-4, at 167.) Sallivanti, on the other hand, does not believe that such measures would be feasible. (Pl.'s Statement of Facts at ¶ 89.)

7. *The correctness of UNUM's initial review of Sallivanti's claim.* Unum asserts that it correctly reviewed the facts of Sallivanti's claim. Sallivanti alleges that it did not.

(See Pl.'s Statement of Facts at ¶¶ 47-60 (alleging that Unum's staff physicians' reports contained misrepresentations and falsehoods, and implying that it was wrong for the Unum physicians to not meet Sallivanti in person); Pl.'s Compl. at ¶ 49 (calling review of the claim "pretext[ual]").) Unum denies these allegations, and in its response to Sallivanti's Statement of Facts lays out in greater detail the method of review employed and the documents reviewed, and argues that the conclusions generated were justified. (See Def.'s Response in Opp'n to Pl.'s Statement of Facts, Doc. 47-1, at ¶¶ 47-60.) As such, there are material disputes of fact as to whether the initial review that Unum conducted was correct (as Unum claims), whether it was incorrect (as Sallivanti claims), or whether it was partially correct and partially incorrect.

8. *The correctness of UNUM's appellate review of Sallivanti's claim.* The same arguments detailed in issue (7) above apply equally to the review and denial of Sallivanti's appeal. Again, Sallivanti claims that the appellate review was selective in the evidence it analyzed and mistaken in its conclusions, and implies that the review was a pretextual method of reaching a predetermined conclusion. (*See* Pl.'s Statement of Facts at ¶¶ 63-93.) Unum denies the relevant parts of these allegations. (*See* Def.'s Response in Opp'n to Pl.'s Statement of Facts at ¶¶ 63-93.)

9. *The relevance of post-appeal developments.* After the conclusion of her appeal, Sallivanti underwent further discography on her spine, the conclusions from which she believes buttress her claim. (Pl.'s Statement of Facts at ¶¶ 95-98.) She was also found "totally disabled" by the Social Security Administration and therefore entitled to Social Security disability benefits. (*Id.* at ¶¶ 99-100.) Unum argues that, even if these post-appeal developments are properly reviewable by the Court, they are nonetheless irrelevant and would not have changed Unum's ultimate decision. (Def.'s Response in Opp'n to Pl.'s Statement of Facts at ¶¶ 95-100.) Because under *Luby*, 944 F.2d at 1184-85, the Court is not limited to considering only those documents that were before Unum, the Court may consider documents related to the post-appeal developments. However, because their relevance and admissibility are in dispute, the Court cannot resolve their impact, if any, on Sallivanti's claim for disability benefits at the summary judgment stage. The Court will need to receive foundation evidence with respect to the medical records and the Social Security decision and, if the documents are admitted, determine the weight, if any, to be given to them. This would require testimony from both parties before the Court can determine whether these post-review developments are sufficiently probative that they should be considered by the Court in its *de novo* review of Unum's decision to deny Sallivanti benefits.

## IV. Conclusion

For the foregoing reasons, the Court will deny both Cross-Motions for Summary Judgment (Docs. 33; 42). A separate Order follows.

Robert D. Mariani

United States District Judge